**FRESHFIELDS US LLP**
Madlyn Gleich Primoff, Esq.
madlyn.primoff@freshfields.com
Michael A. Sloman, Esq.
michael.sloman@freshfields.com
Faron E. Stalker, Esq.
faron.stalker@freshfields.com
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Jaguar Holdings LLC (In Liquidation)
and the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JAGUAR HOLDINGS LLC (IN LIQUIDATION),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12561 (PB)<br><br>(Joint Administration Requested) |

**VERIFIED PETITION FOR RECOGNITION OF
FOREIGN MAIN PROCEEDING OF JAGUAR HOLDINGS LLC
(IN LIQUIDATION) PURSUANT TO 11 U.S.C. §§ 1515 AND 1517 AND FOR
RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1507(a), 1520 AND 1521**

Charles Thresh of Teneo (Bermuda) Limited, on behalf of himself, Michael Morrison and Mark Allitt, in their capacities as the joint liquidators (the "JLs") and duly authorized foreign representatives (the "Foreign Representatives") of Jaguar Holdings LLC (In Liquidation) (the "Debtor"), by their undersigned counsel, for their verified petition (together with the official form petition filed concurrently herewith, the "Verified Petition") for (i) recognition of the Debtor's foreign main proceeding relating to the liquidation proceeding currently pending before the

Supreme Court of Bermuda (the "Bermuda Court"), under Part XIII of the Limited Liability Company Act 2016 (as amended, the "Bermuda LLC Act"), Companies (Winding Up) Commercial Court, 2025: No. 268 (the "Bermuda Proceeding"), as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code"); and (ii) related relief pursuant to sections 105(a), 1504, 1507, 1515, 1516, 1517, 1520, and 1521 of the Bankruptcy Code, respectfully represents as follows.

In support of the Verified Petition, the Foreign Representatives have concurrently filed herewith the *Declaration of Henry Tucker in Support of Verified Petition for Recognition of Foreign Main Proceeding of Jaguar Holdings LLC (In Liquidation) Pursuant to 11 U.S.C. §§ 1515 and 1517 and for Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1520 and 1521* (the "Tucker Declaration"), which is incorporated herein by reference.

## PRELIMINARY STATEMENT

1. The Debtor is an exempted limited liability company registered in Bermuda under the Bermuda LLC Act, with its registered office located in Hamilton, Bermuda. The Debtor is a holding company within a group of insurance and reinsurance entities (the "Group") and is the immediate parent company of the Group's principal Bermuda operating entities. Fleming Intermediate Holdings LLC (In Official Liquidation) ("FIH") is the Debtor's immediate parent.[1] The Debtor's center of main interests ("COMI") is in Bermuda.

2. In November 2023, FIH entered into a stock purchase agreement (the "SPA") with James River Group Holdings, Ltd. ("James River") for the purchase of JRG Reinsurance Company

[1] FIH is the subject of a pending Chapter 15 proceeding before this Court. *In re Fleming Intermediate Holdings LLC (In Official Liquidation)*, Case No. 26-12197 (PB) (Bankr. S.D.N.Y.). Contemporaneously herewith, the Foreign Representatives of the Debtor and the foreign representatives of FIH have filed a motion seeking the joint administration of the Debtor's and FIH's Chapter 15 cases.

Ltd. ("JRG Re"), which was subsequently renamed Fleming International Reinsurance Ltd. ("FIRe"). As described more fully herein, FIH declined to close the transaction after James River took certain actions that were alleged to have breached the SPA. After James River obtained a court order compelling FIH to close the SPA, FIH consummated the purchase of JRG Re, following which JRG Re was renamed FIRe.

3. To finance the acquisition of FIRe, the Group entered into a New York law-governed Credit Agreement (the "Credit Agreement"), dated April 16, 2024, between the Debtor as borrower, FIH as parent guarantor and Royal Bank of Canada ("RBC") as lender and administrative agent. The Credit Agreement permitted the Debtor to borrow senior unsecured term and revolving facilities of up to $125,000,000. FIH fully guaranteed the Debtor's obligations under the Credit Agreement.

4. The Credit Agreement contains a consolidated debt to capitalization covenant, which the Debtor became unable to satisfy. On October 15, 2025, RBC declared multiple events of default under the Credit Agreement and accelerated the loans under the Credit Agreement. As of October 15, 2025, the Debtor was indebted to RBC in the amount of approximately $124.6 million. Following the acceleration of the loans under the Credit Agreement, on October 16, 2025, RBC presented a petition (the "Winding-Up Petition") to the Bermuda Court to wind up the Debtor on the grounds that it was unable to pay its debts.

5. On October 31, 2025, the Bermuda Court entered an order (the "JPL Appointment Order") appointing Michael Morrison, Mark Allitt and Charles Thresh of Teneo (Bermuda) Limited as joint provisional liquidators ("JPLs") of the Debtor with full powers. The JPL Appointment Order expressly authorizes the JPLs to apply to any foreign court for recognition of the Bermuda Proceeding and to act as the foreign representatives of the Debtor. On March 27,

2026, the Bermuda Court entered an order (the "Winding-Up Order") ordering that the Debtor be wound up under the Bermuda LLC Act and ordering the JPLs to continue as the Debtor's provisional liquidators.

6. On June 16, 2026, the Bermuda Court entered an order (the "JL Appointment Order") confirming the JPLs to act as "joint liquidators" of the Debtor under the supervision of the Bermuda Court. Further, on October 15, 2026, the Bermuda Court entered an order (the "Sanction Order") authorizing the JLs to act as the Debtor's foreign representatives within the meaning of section 101(24) of the Bankruptcy Code and to commence this Chapter 15 case. The JLs are thus duly appointed officers authorized to administer the winding up of the Debtor's assets and affairs under the supervision of the Bermuda Court and are the Debtor's foreign representatives under section 101(24) of the Bankruptcy Code for purposes of this Chapter 15 case.

7. The purpose of this Chapter 15 case is to obtain recognition of the Bermuda Proceeding and related relief in the United States in order to protect and maximize the value of the Debtor's estate for the benefit of its creditors and stakeholders, and to enable the JLs to administer the Debtor's affairs in an orderly manner under the supervision of the Bermuda Court. In particular, the Debtor is a party to New York law-governed debt documents, and recognition will enable the JLs to centralize the administration of claims against the Debtor in the Bermuda Proceeding.

8. In addition, Chapter 15 recognition of the Bermuda Proceeding will enable the JLs to investigate, evaluate, preserve and, if appropriate, pursue potential litigation claims for the benefit of the Debtor's estate and its creditors. Chapter 15 will grant the Foreign Representatives access to broad discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"). The Foreign Representatives intend to pursue Rule 2004 discovery in connection with

their investigation into the business and affairs of the Debtor as well as their evaluation and assessment of potential claims and causes of action (which claims and causes of action may represent material assets of the estate). The Foreign Representatives' ability to adequately review, investigate and, if appropriate, pursue potential litigation claims may serve to maximize the distribution of recoveries to the Debtor's creditors. For these reasons, the Foreign Representatives submit that Chapter 15 recognition of the Bermuda Proceeding will facilitate the administration of the Debtor's estate and maximize value for all of the Debtor's stakeholders.

9. As discussed below, the Debtor's assets in this district include a retainer held by the Foreign Representatives' counsel in New York, New York. Additionally, the Debtor is party to the New York law-governed Credit Agreement.

10. The Debtor's COMI is in Bermuda because, among other reasons, the Debtor has been incorporated in Bermuda since 2023, has its registered office in Hamilton, Bermuda, has a majority of its property located in Bermuda, is supervised by the Bermuda Court in the Bermuda Proceeding, and has its nerve center in Bermuda.

11. By this Verified Petition, the Foreign Representatives seek entry of an order, substantially in the form attached hereto, (i) recognizing the Bermuda Proceeding as a foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code; (ii) recognizing the JLs as the Debtor's foreign representatives within the meaning of section 101(24); and (iii) granting related relief under sections 1520 and 1521, including the protections of the automatic stay in the United States. As set forth herein, the requested relief is appropriate because, among other reasons, (a) the Bermuda Proceeding is a foreign main proceeding, as this Court has repeatedly held with respect to Bermuda winding-up and provisional liquidation proceedings; (b) the Debtor's COMI is in Bermuda; and (c) the JLs are proper foreign representatives appointed by the Bermuda Court.

Recognition of the Bermuda Proceeding is consistent with, and not manifestly contrary to, the public policy of the United States.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) because the Debtor's principal asset in the United States is located in this district. Specifically, the Debtor has an interest in an undrawn retainer with Freshfields US LLP ("Freshfields"), the United States counsel for the Debtor and the Foreign Representatives in connection with this Chapter 15 case, in New York, New York. Moreover, the Debtor is a party to certain New York law-governed debt documents.

14. The statutory predicates for the relief requested herein are sections 105(a), 1504, 1507, 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code.

## BACKGROUND

### I. The Debtor's Business

15. The Debtor is an exempted limited liability company registered in Bermuda on December 13, 2023, with registration number 202303098. The Debtor's registered office is at Conyers Corporate Services (Bermuda) Limited, Clarendon House, 2 Church Street, Hamilton, Pembroke HM11, Bermuda.

16. The Debtor sits within a Group of insurance and reinsurance entities that is ultimately owned by ACP Fleming Holdings, L.P. ACP Fleming Holdings, L.P. wholly owns ACP Risk Solutions LLC, which in turn wholly owns Fleming Reinsurance Holdings LLC. Fleming Reinsurance Holdings LLC wholly owns FIH, which is the direct parent of the Debtor. The Debtor

is the immediate holding company of (i) FIRe, a Class 3B reinsurer, and (ii) Fleming International Services Co Bermuda LLC, which acts as the service company to FIRe and other Group entities.

17. The Group conducts its primary business as a specialty run-off acquirer and legacy reinsurance liability carrier focused on the North American property and casualty industry and assuming reinsurance business ceded to it by various ceding insurers. FIRe is exclusively permitted under its license and applicable regulatory guidance to write retroactive reinsurance.

## II. The Debtor's U.S. Assets

18. The Debtor has property and interests in property in the United States, and in this district in particular. The Debtor is a party to the Credit Agreement, which is governed by the law of the State of New York. Under section 10.09 of the Credit Agreement, the Debtor irrevocably and unconditionally submitted to the exclusive jurisdiction of the courts of the State of New York sitting in New York County and the United States District Court for the Southern District of New York in respect of any action relating to the Credit Agreement.

19. Pursuant to the terms of the JLs' engagement with Freshfields, the Debtor agreed to transfer $10,000 of the Debtor's funds to New York to serve as a retainer for Freshfields' fees throughout the engagement. Pursuant to the terms of the engagement, the funds can be applied to Freshfields' invoice only at the direction of the Debtor. The Debtor has not given any such direction and will not give any such direction until after the above-captioned Chapter 15 case is closed. On September 22, 2026, the Debtor's funds in the amount of $10,000 were deposited in a client trust account with Citibank ("Citi") in the United States (the "Client Trust Account"). The Debtor is the beneficial owner of the Client Trust Account for United States tax withholding purposes. Citi has confirmed that the Debtor has $10,000 in an account with Citi in the United States.

## III. Summary of the Group's Capital Structure

20. The Group's funded indebtedness consists principally of loans advanced under the New York law-governed Credit Agreement, dated as of April 16, 2024, between the Debtor, as borrower, FIH, as guarantor, and RBC as lender, issuing lender and administrative agent. The loans under the Credit Agreement are comprised of (i) a $75,000,000 senior unsecured term loan facility (the "Term Loan Facility") and (ii) a $50,000,000 senior unsecured revolving credit facility (the "RCF" and, together with the Term Loan Facility, the "Loan Facilities"). As described more fully below, the Group entered into the Credit Agreement to finance the acquisition of FIRe.

21. The Loan Facilities are unsecured and guaranteed by FIH. As described more fully below, on October 15, 2025, RBC issued a notice of acceleration in respect of the Credit Agreement following an event of default under the Credit Agreement, resulting in the entirety of all amounts outstanding under the Credit Agreement becoming immediately due and payable. As of October 15, 2025, the Debtor is indebted to RBC under the Credit Agreement in the amount of approximately $124.6 million.

## IV. Events Giving Rise to the Bermuda Proceeding

22. On November 8, 2023, FIH entered into the SPA with James River, pursuant to which FIH agreed to acquire the shares of JRG Re. Prior to the closing of the SPA, on or around February 26, 2024, JRG Re made certain distributions (the "Distributions") to James River in the aggregate amount of approximately $139 million. FIH raised concerns about the Distributions to James River and, because of such concerns, ultimately determined that it should not consummate the SPA and acquisition of JRG Re.

23. On March 11, 2024, James River filed an action in the Supreme Court of the State of New York (the "NY State Court"), Index No. 651281/2024, seeking an order (among other

things) compelling FIH to close the SPA and consummate the transactions contemplated thereby. On April 6, 2024, the NY State Court granted James River a preliminary injunction, directing FIH to close the SPA and complete the purchase of the JRG Re shares within ten (10) days. FIH and James River subsequently closed the transaction and FIH acquired JRG Re.

24. In order to finance the acquisition of FIRe, the Debtor and FIH entered into the Credit Agreement with RBC. One of the covenants under the Credit Agreement required the Debtor to maintain a maximum consolidated debt to capitalization ratio (the "CDCR Covenant"). On May 30, 2025, the Debtor delivered to RBC a certificate acknowledging the occurrence and continuation of certain events of default arising from the Debtor's failure to satisfy the CDCR Covenant as of March 31, 2025. On August 27, 2025, the Debtor delivered to RBC another certificate acknowledging a further event of default arising from the Debtor's failure to satisfy the CDCR Covenant as of June 30, 2025.

25. The Debtor subsequently failed to make a payment of accrued interest due and payable under the Credit Agreement on October 14, 2025, and failed to provide notice of such default as required by the Credit Agreement. As a result of these events of default, on October 15, 2025, RBC issued an acceleration notice to the Debtor terminating the commitments under the Credit Agreement and declaring the loans immediately due and payable, together with accrued interest, fees and other obligations. The total accelerated debt under the Credit Agreement is in the amount of approximately $124.6 million as of October 15, 2025.

## V. The Bermuda Proceeding

26. On October 16, 2025, RBC filed the Winding-Up Petition in the Bermuda Court, commencing the Bermuda Proceeding and seeking the appointment of the JLs as joint provisional liquidators to oversee the liquidation and winding up of the Debtor. On October 31, 2025, the

Supreme Court of Bermuda entered the JPL Appointment Order, granting RBC's request and appointing Michael Morrison, Mark Allitt and Charles Thresh of Teneo (Bermuda) Limited as joint provisional liquidators of the Debtor. On June 16, 2026, the Bermuda Court entered the JL Appointment Order confirming the JPLs as the joint liquidators of the Debtor under the supervision of the Bermuda Court. On October 15, 2026, the Bermuda Court entered the Sanction Order, authorizing the JLs to act as the Debtor's Foreign Representatives and to commence this Chapter 15 case.

27. The JLs may exercise such powers as conferred by the Bermuda LLC Act and the JL Appointment Order. Among other powers, the JLs are empowered to do all actions as may be necessary for winding up the affairs of the Debtor and distributing its assets. Tucker Decl. ¶ 36(h). Further, the Bermuda Court authorized the JLs to:

> . . . apply to any foreign court (wherever situated) for recognition of their appointment or in connection with any other proceedings in order to take advantage of any insolvency or bankruptcy protections that such foreign law, procedures or proceedings may provide to the [Debtor] in order to facilitate any restructuring contemplated by the [Debtor]. The JPLs shall be a foreign representative for the purposes of the UNCITRAL Model Law.

JPL Appointment Order ¶ 3(z).

28. By order dated November 5, 2025, the Bermuda Court authorized the JLs to enter into a funding agreement with RBC to fund the costs and expenses of the provisional liquidation. The hearing of the Winding-Up Petition was thereafter adjourned by orders dated December 5, 2025 and January 16, 2026 to March 27, 2026. On March 26, 2026, the JLs filed their first report with the Bermuda Court.

29. On March 27, 2026, the Bermuda Court entered the Winding-Up Order, ordering that the Debtor be wound up under the provisions of the Bermuda LLC Act and ordering that the JLs continue as provisional liquidators of the Debtor. The Winding-Up Order also set the first

meetings of creditors and contributories to be held within six weeks of the date of the order. The Debtor remains subject to the supervision of the Bermuda Court in the Bermuda Proceeding. The JLs, as the duly appointed officers of the Debtor authorized to administer the winding up of the Debtor's assets and affairs under the supervision of the Bermuda Court, are the Debtor's foreign representatives for purposes of this Chapter 15 case.

30. The JLs have determined that it would be advantageous for the Debtor to commence this Chapter 15 case, and to do so in connection with FIH's pending Chapter 15 case. RBC is also the largest creditor of FIH. The Debtor, in turn, is the second largest creditor of FIH, holding an intercompany receivable from FIH that represents approximately 37% by value of claims presently identified against FIH. Accordingly, all benefits to FIH's creditors obtained from FIH's Chapter 15 case will benefit both the Debtor and RBC, as the most substantial creditor of both the Debtor and FIH. Accordingly, the JLs have determined to commence this Chapter 15 case to facilitate a coordinated Rule 2004 discovery process with FIH that will encompass all potential parties in interest.

## VI. Center of Main Interests of the Debtor

31. The Debtor's COMI is in Bermuda. The Debtor is an exempted limited liability company registered in Bermuda under the Bermuda LLC Act and maintains its registered office in Hamilton, Bermuda. The majority of the Debtor's assets are located in Bermuda and the Debtor conducts its business from Bermuda. Moreover, Bermuda is the nerve center of the Debtor's liquidation proceeding, since the liquidation is supervised by the Bermuda Court and the Debtor's affairs are presently administered from Bermuda by the JLs, officers appointed by and subject to the supervision of the Bermuda Court. Accordingly, pursuant to Bankruptcy Code section 1516(c), the Debtor is entitled to the presumption that its COMI is in Bermuda.

## RELIEF SOUGHT

32. By this Verified Petition, the Foreign Representatives seek the following relief:

(1) recognition pursuant to section 1517 of the Bankruptcy Code of the Bermuda Proceeding as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code;

(2) recognition that the Foreign Representatives are the "foreign representatives" on a final basis (as defined in section 101(24) of the Bankruptcy Code);

(3) all relief automatically available pursuant to section 1520 of the Bankruptcy Code, including a stay of execution against the Debtor's assets in the United States and barring, enjoining, and staying, pursuant to section 362 of the Bankruptcy Code, any action to interfere with these assets; and

(4) such other and further relief as is appropriate under the circumstances pursuant to sections 105(a), 1507 and 1521 of the Bankruptcy Code.

33. To the extent the relief requested herein exceeds the relief available to the Foreign Representatives with respect to the Debtor pursuant to section 1520 of the Bankruptcy Code, the Foreign Representatives request this relief pursuant to section 1521 of the Bankruptcy Code.

34. In the event the Court were to determine the Bermuda Proceeding is not a foreign main proceeding, the Foreign Representatives seek recognition of the Bermuda Proceeding as a "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code and request that the Court grant the relief requested above pursuant to sections 1507 and 1521 of the Bankruptcy Code.

## BASIS FOR RELIEF

35. Chapter 15 of the Bankruptcy Code is designed to protect and maximize the value of a foreign debtor's assets, and to facilitate the liquidation or restructuring of its assets and liabilities. The relief afforded to a foreign debtor under Chapter 15 is intended to avoid disruptions that could otherwise derail a debtor's insolvency proceeding in its home country, in this case, Bermuda. One of the primary objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

36. For the reasons set forth herein, the Bermuda Proceeding is entitled to recognition under section 1517 of the Bankruptcy Code, and recognition is mandatory once the statutory requirements of section 1517(a) are met. *See In re Millard*, 501 B.R. 644, 653–54 (Bankr. S.D.N.Y. 2013). The Bermuda Proceeding is (i) a foreign proceeding within the meaning of Bankruptcy Code section 101(23) and (ii) a foreign main proceeding within the meaning of Bankruptcy Code section 1502(4). As described above, the Debtor's registered office is located in Bermuda, which is the Debtor's COMI within the meaning of Bankruptcy Code section 1516(c). The Foreign Representatives are foreign representatives within the meaning of Bankruptcy Code section 101(24), and the Verified Petition meets the requirements of Bankruptcy Code section 1515.

37. The requested relief is also consistent with the goals of Chapter 15. The Foreign Representatives submit that granting the relief sought herein will aid the Bermuda Proceeding and will facilitate an orderly winddown of the Debtor's estate. Through the Bermuda Proceeding, the Debtor is seeking to maximize value for the benefit of its stakeholders and to ensure the just treatment of all holders of claims against and interests in the Debtor. These goals are aligned with the objectives of Chapter 15. *See* 11 U.S.C. § 1501(a)(3).

38. Moreover, granting recognition will promote the U.S. public policy of respecting foreign proceedings as articulated in, *inter alia*, Bankruptcy Code sections 1501(a) and 1508 and does not violate Bankruptcy Code section 1506. Thus, the conditions for recognition of the Foreign Representatives and the Bermuda Proceeding under Bankruptcy Code section 1517 have been satisfied.

## I. The Debtor is Eligible for Chapter 15 Relief.

39. Section 109(a) of the Bankruptcy Code requires that a debtor have a residence, domicile, a place of business, or property in the United States. *See* 11 U.S.C. § 109(a). The Second Circuit has held that section 109(a) applies to a debtor in a foreign main proceeding under Chapter 15. *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 250 (2d Cir. 2013). Here, the Debtor satisfies section 109(a) because it has property in the United States. Specifically, the Debtor has an interest in an undrawn retainer with Freshfields, the Debtor's and Foreign Representatives' United States counsel, located in New York. Additionally, the Debtor is a party to the Credit Agreement, which is USD-denominated and governed by the law of the State of New York and under which the Debtor submitted to the jurisdiction of the New York courts. For these reasons, the Debtor satisfies section 109(a) of the Bankruptcy Code.

## II. This Case has Been Properly Commenced Under Chapter 15.

40. Section 1504 of the Bankruptcy Code provides that a case under Chapter 15 is "commenced by the filing of a petition for recognition of a foreign proceeding under section 1515." 11 U.S.C. § 1504. As set forth below, the Foreign Representatives have satisfied the requirements of section 1515.

### A. <u>This Case is Proper Under Chapter 15.</u>

41. Chapter 15 applies where, as here, a foreign representative seeks assistance in the United States in connection with a foreign proceeding. 11 U.S.C. § 1501(b)(1). One of the

objectives of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

42. This Chapter 15 case has been commenced for the purpose of protecting and maximizing the value of the Debtor's estate for the benefit of the Debtor and its stakeholders so that the Debtor's assets and affairs can be administered in an orderly manner under the supervision of the Bermuda Court. On this basis, the Foreign Representatives submit that this Chapter 15 case is proper and consistent with the goals and objectives of Chapter 15.

**B. <u>This Case Was Commenced in Accordance with Section 1515(a).</u>**

43. To obtain recognition of the Bermuda Proceeding under section 1515(a), the Foreign Representatives must satisfy two principal requirements: (a) the Bermuda Proceeding must qualify as a "foreign proceeding," and (b) the Foreign Representatives must qualify as a "foreign representative." Both requirements are satisfied here.

***i. This Case Concerns a Foreign Proceeding.***

44. Bankruptcy Code section 101(23) provides, in pertinent part:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

45. Courts have held that a foreign proceeding is one:

(1) in which "acts and formalities [are] set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice," *In re Betcorp Ltd.*, 400 B.R. 266, 278 (Bankr. D. Nev. 2009);

(2) that has either a judicial or administrative character, *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *Betcorp*, 400 B.R. at 277);

(3) that is collective in nature, in the sense that the proceeding considers the rights and obligations of all creditors, *id.*;

(4) that is located in a foreign country, *id.*;

(5) that is authorized or conducted under a law related to insolvency or the adjustment of debt, even if the debtor that has commenced such proceedings is not actually insolvent, *id.*;

(6) in which the debtor's assets and affairs are subject to control or supervision of a foreign court or other authority competent to control or supervise a foreign proceeding, *id.*; and

(7) whose purpose is reorganization or liquidation, *id.*

The Bermuda Proceeding satisfies these requirements and thus qualifies as a "foreign proceeding" within the meaning of Bankruptcy Code section 101(23).

46. ***First***, the Bermuda Proceeding is a proceeding commenced under the Bermuda LLC Act, a Bermuda law relating to insolvency, commenced for the purpose of the orderly liquidation of the Debtor for the benefit of its creditors as a whole. *See* Tucker Decl. ¶¶ 24, 40.

47. ***Second***, the proceeding is "judicial," as it has been commenced and is pending before the Bermuda Court. Importantly, the Bermuda Court has been given jurisdiction over all winding up proceedings for companies in Bermuda. *See* Tucker Decl. ¶¶ 24-25.

48. ***Third***, the Bermuda Proceeding is collective in nature, in that all affected creditors are allowed to participate. A collective proceeding is one that "considers the rights and obligations of all creditors." *Betcorp*, 400 B.R. at 281. A non-collective proceeding, by contrast, resembles a

"receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *Id*. A key principle underlying Part XIII of the Bermuda LLC Act and the Bermuda Proceeding is that the claims of investors and creditors within the same class are treated on a *pari passu* basis. *See* Tucker Decl. ¶ 30. The Bermuda Proceeding thus bears the hallmarks of a collective proceeding.

49. ***Fourth***, the Bermuda Court before which the Bermuda Proceeding is pending is in Bermuda, which is a foreign country.

50. ***Fifth***, the Debtor's assets are subject to the supervision of the Bermuda Court during the pendency of the Bermuda Proceeding.

51. ***Finally***, the objective of the Bermuda Proceeding is liquidation of all of the Debtor's assets. Thus, the JLs commenced the Bermuda Proceeding for the purpose of liquidation, as required by section 101(23) of the Bankruptcy Code.

52. Courts in this district have repeatedly recognized Bermuda winding-up and provisional liquidation proceedings as "foreign proceedings" under Chapter 15. *See, e.g.*, *In re Fleming Int'l Reinsurance Ltd.*, No. 25-12353 (JPM) (Bankr. S.D.N.Y. Oct. 26, 2025); *In re Culligan Ltd.*, No. 20-12192 (JLG), 2021 WL 2787926, at *8 (Bankr. S.D.N.Y. July 2, 2021); *In re VL Assurance (Bermuda) Ltd.*, No. 21-10682 (MG) (Bankr. S.D.N.Y. May 17, 2021); *In re PB Life & Annuity Co.*, No. 20-12791 (SCC) (Bankr. S.D.N.Y. Jan. 5, 2021); *In re Spencer Cap. Holdings Ltd.*, No. 20-12287 (JLG) (Bankr. S.D.N.Y. Nov. 24, 2020).

***ii. This Chapter 15 Case was Commenced by the Duly Authorized Foreign Representatives.***

53. Section 101(24) of the Bankruptcy Code defines a "foreign representative" as a "person or body… authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."

11 U.S.C. § 101(24). The JLs were appointed by the Bermuda Court to conduct the Debtor's liquidation under the supervision of the Bermuda Court and are authorized pursuant to the JPL Appointment Order to ascertain, take possession of and administer the Debtor's assets and affairs. Additionally, the JPL Appointment Order and the Sanction Order entered by the Bermuda Court expressly authorize the JLs to act as the Debtor's "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code. The JLs therefore satisfy the requirements of section 101(24) and are the Debtor's "foreign representatives" within the meaning of that section.

54. Courts in this district have consistently held that a liquidator or provisional liquidator appointed in Bermuda constitutes a "foreign representative" for Chapter 15 purposes. *See, e.g.*, *In re Northeast Insurance Company Limited*, No. 25-12275 (MEW) (Bankr. S.D.N.Y. Oct. 15, 2025); *In re Digicel Grp. One Ltd.*, No. 20-11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020); *In re Gerova Fin. Grp. Ltd.*, No. 12-13641 (ALG) (Bankr. S.D.N.Y. Oct. 11, 2012*); In re Lehman Re Ltd.*, No. 09-14884 (JMP) (Bankr. S.D.N.Y. Sept. 24, 2009).

**C. <u>This Case was Properly Commenced Under Section 1515(b).</u>**

55. To establish a basis for recognition under Chapter 15 of the Bankruptcy Code, the petition for recognition must be supported by the documentation enumerated in section 1515(b) of the Bankruptcy Code. Specifically, the Chapter 15 petition must be accompanied by:

> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;
>
> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>
> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

56. The Foreign Representatives commenced this Chapter 15 case by filing the Official Form 401 Petition for the Debtor, which includes, as exhibits, certified copies of the Winding-Up Order, the JPL Appointment Order, and the JL Appointment Order. Accordingly, the Foreign Representatives submit that this case has been properly commenced under 11 U.S.C. § 1515(b) and (c).

**III. The Bermuda Proceeding Should be Recognized as a Foreign Main Proceeding.**

57. The Bankruptcy Code provides that a foreign proceeding for which Chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its "center of main interests." 11 U.S.C. §§ 1517(b), 1502(4). Although "center of main interests" is not defined in the Bankruptcy Code, courts in the U.S. have generally found a debtor's COMI to be where the debtor conducts the administration of its interests on a regular basis and is, therefore, ascertainable by third parties. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013) ("The relevant principle … is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties."). A debtor's COMI "should be determined based on its activities at or around the time the Chapter 15 petition is filed." *Id*. at 137. In the absence of evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests. 11 U.S.C. § 1516(c).

58. In assessing COMI, courts consider, among other factors, the location of the debtor's headquarters, the location of those who actually manage the debtor and the location of the debtor's primary assets, and they give particular weight to the location where liquidators or provisional liquidators administer the debtor's affairs as of the petition date. *See In re SphinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 706 (Bankr.

S.D.N.Y. 2017); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 417–18 (Bankr. S.D.N.Y. 2014); *In re Fairfield Sentry*, 714 F.3d at 137. As set forth above, the Debtor's registered office is located in Hamilton, Bermuda, and Bermuda is the nerve center of the Debtor's liquidation. As of the date of this Chapter 15 filing, which is when a debtor's COMI is ascertained, *see In re Fairfield Sentry*, 714 F.3d at 137, the business of the Debtor is the liquidation of its assets. Since their appointment, the JLs have centralized the administration of the Debtor's assets and affairs in Bermuda under the supervision of the Bermuda Court. Moreover, the JLs are each permanent residents of Bermuda. Accordingly, the Debtor's COMI is in Bermuda, the Bermuda Proceeding constitutes a "foreign main proceeding" within the meaning of section 1502(4) and the Debtor is entitled to an order (substantially in the form annexed hereto) recognizing the Bermuda Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

**IV. Once Recognized, the Debtor is Entitled to Certain Relief under Section 1520.**

59. Upon recognition of the Bermuda Proceeding as a foreign main proceeding, the Debtor is automatically entitled to the relief under section 1520(a) of the Bankruptcy Code, including application of the automatic stay under section 362 to the Debtor and its property within the territorial jurisdiction of the United States. The Foreign Representatives request that, through the extension of the relief automatically available under section 1520(a), the Court expressly bar, enjoin and stay any action that interferes with the Debtor's assets and interests in the United States. As these benefits flow automatically from recognition of the Bermuda Proceeding, the Foreign Representatives respectfully submit that no further showing is required.

**V. Certain Additional Relief is Both Necessary and Appropriate.**

60. To the extent any requested relief is outside the scope of section 1520, the Foreign Representatives request such relief pursuant to sections 1521 and 1507 of the Bankruptcy Code. Section 1521 authorizes the Court to grant "any appropriate relief," including "any additional relief

that may be available to a trustee," provided that the interests of creditors in the United States are sufficiently protected. Section 1522(a) permits the Court to grant relief pursuant to section 1521 only if the interests of creditors, the debtor, and other interested entities are "sufficiently protected." "Sufficient protection" embodies "three basic principles: 'the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law.'" *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009).

61. Here, the Debtor's creditors have had a full and fair opportunity to be heard in the Bermuda Proceeding in a manner consistent with U.S. due process standards, including through the meetings of creditors. RBC, which, based on the JLs' current records and estimates, holds approximately 100% of the claims presently identified against the Debtor and is by far the Debtor's largest identified creditor, supports the commencement of this Chapter 15 case. Under principles of comity, this Court should recognize and give effect to the Bermuda Proceeding and the orders of the Bermuda Court. U.S. federal courts generally extend comity to a foreign court's judgments where the foreign court has proper jurisdiction, provides a full and fair process, and enforcement does not contravene U.S. law or public policy. *See Hilton v. Guyot*, 159 U.S. 113, 202–03 (1895). Accordingly, additional relief and assistance under sections 1521 and 1507 are appropriate.

## VI. Recognition of the Bermuda Proceeding Would Not be Manifestly Contrary to United States Public Policy.

62. While a bankruptcy court may decline to grant relief requested in a Chapter 15 case if the action would be "manifestly contrary to the public policy of the United States," 11 U.S.C. § 1506, courts that have addressed this "public policy exception" have noted that the exception is narrow, its application is restricted to the most fundamental policies of the U.S., and a foreign

judgment should generally be accorded comity if the foreign jurisdiction's proceedings meet a fundamental standard of fairness. *See, e.g., In re Odebrecht Engenharia e Construção S.A. – EM Recuperação Judicial*, 669 B.R. 457, 466 (Bankr. S.D.N.Y. 2025); *In re Credito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150, 171 (Bankr. D. Del. 2025); *see also In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (holding that a U.S. bankruptcy court is not required to make an independent determination about the propriety of the acts of a foreign court, but only whether their procedures meet U.S. standards of fundamental fairness). Recognition of the Bermuda Proceeding would further the Bankruptcy Code's goal of centralizing disputes concerning the Debtor in the Bermuda Proceeding. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). Recognition of the Bermuda Proceeding, and the relief requested herein, would not be manifestly contrary to U.S. public policy, and no basis exists to refuse recognition under section 1506.

## NOTICE

63. Pursuant to Rule 2002(q)(1) of the Federal Rules of Bankruptcy Procedure and Rule 2002-4 of the Local Bankruptcy Rules for the Southern District of New York, notice of this Verified Petition will be provided to (i) the Debtor; (ii) the JLs; (iii) RBC; (iv) the Office of the United States Trustee for the Southern District of New York; (v) all parties to litigation pending in the United States in which the Debtor is a party and such parties' counsel, and (vi) any other entity as the Court may direct (collectively, the "Notice Parties").

## NO PRIOR REQUEST

64. The Foreign Representatives have not previously sought the relief requested herein from this or any other court.

## **CONCLUSION**

In fulfilment of the requirement of Section 1515(b) of the Bankruptcy Code, a certified copy of the Winding-Up Order is attached hereto as **Exhibit 1**, a certified copy of the JPL Appointment Order is attached hereto as **Exhibit 2**, and a certified copy of the JL Appointment Order is attached hereto as **Exhibit 3**.

WHEREFORE, the Foreign Representatives respectfully request that this Court (a) grant the relief requested in this Verified Petition and enter an order in the form attached hereto as **Exhibit A** and (b) grant such other further relief and additional assistance as this Court may deem just and proper.

Dated: October 28, 2026
New York, New York

By: */s/ Madlyn Gleich Primoff*
Madlyn Gleich Primoff, Esq.
Michael A. Sloman, Esq.
Faron E. Stalker, Esq.
**FRESHFIELDS US LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
E-mail: madlyn.primoff@freshfields.com
michael.sloman@freshfields.com
faron.stalker@freshfields.com

*Attorneys for Jaguar Holdings LLC (In Liquidation) and the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JAGUAR HOLDINGS LLC (IN LIQUIDATION),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12561 (PB)<br><br>(Joint Administration Requested) |

**<u>VERIFICATION OF PETITION</u>**

I, Charles Thresh, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

1. I am the Head of Financial Advisory of Teneo (Bermuda) Limited and one of the duly authorized Foreign Representatives of the Debtor.

2. I have read the foregoing *Verified Petition for Recognition of Foreign Main Proceeding of Jaguar Holdings LLC (In Liquidation) Pursuant to 11 U.S.C. §§ 1515 and 1517 and for Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1520 and 1521*. Where I have personal knowledge of the factual allegations contained therein, I believe that they are true and accurate. I am otherwise informed and believe that all other factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

Docusign Envelope ID: 9298F18E-1FAB-846A-8119-CDC0412FA0AA


3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of October, 2026 in Hamilton, Bermuda.

______________________________
Charles Thresh
Foreign Representative of Jaguar Holdings LLC (In Liquidation)