**FRESHFIELDS US LLP**
Madlyn Gleich Primoff, Esq.
madlyn.primoff@freshfields.com
Michael A. Sloman, Esq.
michael.sloman@freshfields.com
Faron E. Stalker, Esq.
faron.stalker@freshfields.com
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Jaguar Holdings LLC (In Liquidation)*
*and the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 15 |
| JAGUAR HOLDINGS LLC (IN LIQUIDATION), | Case No. 26-12561 (PB) |
| | (Joint Administration Requested) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF HENRY TUCKER IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING OF JAGUAR HOLDINGS LLC (IN LIQUIDATION) PURSUANT TO 11 U.S.C. §§ 1515 AND 1517 AND FOR RELATED RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1507(a), 1520 AND 1521**

I, Henry Tucker, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

## Introduction

1. I am the Office Managing Partner of the law firm of Harneys Bermuda Limited ("Harneys"). Harneys represents Michael Morrison, Mark Allitt and Charles Thresh of Teneo (Bermuda) Limited in their capacities as joint liquidators and duly authorized foreign representatives (in such capacities, jointly and severally, the "JLs" or the "Foreign

Representatives") of Jaguar Holdings LLC (In Liquidation) ("Jaguar"). I am the partner at Harneys dealing with this case.

2. I respectfully submit this declaration ("Declaration") in support of the *Verified Petition for Recognition of Foreign Main Proceeding of Jaguar Holdings LLC (In Liquidation) Pursuant to 11 U.S.C. §§ 1515 and 1517 and for Related Relief Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1520 and 1521* (the "Verified Petition"), filed contemporaneously herewith.[1]

3. In preparing this Declaration, I have reviewed (i) the Verified Petition; (ii) the relevant provisions of Bermuda law, and (iii) the relevant pleadings filed with the Bermuda Court (as defined herein) in the Bermuda Proceeding (as defined herein). I rely on the Verified Petition, the factual allegations of which have been verified by one of the JLs, for the factual background relevant to views which I express in this Declaration.

4. I am the Office Managing Partner in the litigation, insolvency and restructuring practice of the Harneys' Bermuda office. I was admitted to the Bar in Bermuda in 2011 and practised as a Bermuda attorney continuously from 2011 to 2026. I therefore have over 15 years' experience practising law as a qualified attorney, including more than 15 years practising Bermuda law.

5. My practice focuses on insolvency, restructuring and commercial litigation. I have considerable experience advising court-appointed liquidators, banks, multinational corporations and financial services institutions in the liquidation and winding-up of Bermuda companies. I have acted for voluntary and official liquidators of numerous Bermuda companies and frequently appear as an advocate before the Supreme Court of Bermuda (the "Bermuda Court") in insolvency proceedings.

---

[1] Capitalised terms used but not otherwise defined herein shall have the meaning given to them in the Verified Petition.

6. I regularly appear as lead counsel in the Bermuda Court and have numerous reported decisions, and I have conducted appeals in the Bermuda Court of Appeal / Privy Council. My appearances concern aspects of the Bermuda Companies Act 1981 (the "Companies Act"), the Limited Liability Company Act 2016 (the "LLC Act"), the Companies (Winding-Up) Rules 1982 and other laws governing insolvency of Bermuda entities.

7. As a practising Bermuda attorney, I am competent to testify with respect to the Bermuda legal matters discussed herein, which are well within my expertise. I have previously provided expert evidence of Bermuda insolvency law to courts.

8. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or based upon my review of relevant documents, including, without limitation, the Verified Petition, or upon my opinion based upon my experience and knowledge. To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the law of Bermuda as a practising Bermuda attorney.

9. For the reasons discussed below, it is my position that: (i) the Bermuda Proceeding constitutes a "foreign proceeding" and the JLs qualify as "foreign representatives" in connection with the Bermuda Proceeding according to 11 U.S.C. §§ 101(23) and (24), respectively; and (ii) the Bermuda Proceeding is a "foreign main proceeding" within the meaning of the Bankruptcy Code.

**Background**

10. Jaguar was incorporated on 13 December 2023 as an exempted limited liability company registered in Bermuda pursuant to the LLC Act. Jaguar is the subject of a liquidation proceeding under the supervision of the Bermuda Court (the "Bermuda Proceeding"), numbered Companies (Winding Up) 2025: No. 268.

11. Jaguar is a wholly owned subsidiary of Fleming Intermediate Holdings LLC (In Official Liquidation) ("FIH"), a Cayman Islands limited liability company which is currently

in official liquidation in the Cayman Islands (Grand Court Cause No. FSD 347 of 2025). Jaguar is in turn the holding company of Fleming International Reinsurance Ltd ("FIRe"), a Bermuda subsidiary. Jaguar is part of a group of companies, which are engaged, through operating subsidiaries, in the business of acting as specialty run-off acquirer and legacy reinsurance liability carrier focused on the North American Property & Casualty industry and assuming reinsurer of reinsurance business ceded to it by various ceding insurance companies.

12. The liquidation of Jaguar was preceded by the default of Jaguar of certain terms of a credit agreement between (amongst others) Jaguar as borrower, FIH as guarantor, and Royal Bank of Canada ("RBC") as lender, issuing lender and administrative agent for the lenders (the "Credit Agreement"). Pursuant to the Credit Agreement, Jaguar is indebted to RBC in the amount of US$124,622,504.81 as at 15 October 2025. Jaguar's largest known creditor is RBC.

13. On 16 October 2025, RBC presented a winding-up petition in respect of Jaguar to the Bermuda Court.[2] The first affidavit of Christopher DeCotiis of RBC was sworn on 17 October 2025 in support of the petition.

14. By order of the Bermuda Court dated 31 October 2025 (the "JPL Appointment Order"), Michael Morrison, Mark Allitt and Charles Thresh, all of Teneo (Bermuda) Limited, were appointed as joint provisional liquidators of Jaguar (the "JPLs").

15. On 27 March 2026, the Bermuda Court made a winding-up order in respect of Jaguar (the "Winding-Up Order"). On 16 June 2026, the Bermuda Court made an order (the "JL Appointment Order") confirming the JPLs' appointment as the JLs of Jaguar. The JLs are

[2] The court file in the Bermuda Proceeding is sealed pursuant to paragraph 8 of the JPL Appointment Order and is not available for public inspection until further order of the Bermuda Court.

now responsible for the administration of the liquidation of Jaguar under the supervision of the Bermuda Court.

16. As the duly appointed joint liquidators of Jaguar, the JLs may exercise such powers as are conferred by the LLC Act[3] and the JL Appointment Order. As I shall discuss in further detail below, the JL Appointment Order confers express powers, with the sanction either of the Court or the committee of inspection as set out in section 122 of the LLC Act, being:

(a) to bring or defend any action or other legal proceeding in the name and on behalf of the limited liability company;

(b) to carry on the business of the limited liability company so far as may be necessary for the beneficial winding up thereof;

(c) to appoint an attorney to assist him in the performance of his duties;

(d) to pay any classes of creditors in full;

(e) to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim, present or future, certain or contingent ascertained or sounding only in damages against the limited liability company, or whereby the limited liability company may be rendered liable;

(f) to compromise all calls and liabilities to calls debts and liabilities capable of resulting in debts, and all claims, present or future, certain or contingent, ascertained or sounding only in damages, subsisting or supposed to subsist between the limited liability company and a contributory or alleged contributory or other debtor or person apprehending liability to the limited liability company, and all questions in any way relating to or affecting the assets of the winding up of the limited liability company, on such terms as may be agreed, and take any security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect thereof.[4]

17. As joint liquidators appointed by the Bermuda Court, the JLs may exercise such powers as conferred by the LLC Act and the JL Appointment Order. On 15 October 2026, by order of the Bermuda Court, the JLs are authorised to act as Jaguar's foreign representatives

---

3 Section 122 of the LLC Act.

4 Section 122 (1)(a)-(f) of the LLC Act.

within the meaning of section 101(24) of the Bankruptcy Code and to commence this Chapter 15 case.

**Sources of Law of Bermuda**

18. I have been asked by the JLs to explain in general terms the relevant substantive Bermuda law and procedural rules relating to the liquidation and dissolution of insolvent Bermuda limited liability companies, and in particular how they relate to Jaguar, for the purpose of filing a petition for recognition of the Bermuda Proceeding as a foreign main proceeding under Chapter 15 of the Bankruptcy Code. The issues on which I have been asked to opine fall well within my professional experience.

19. Bermuda is a British Overseas Territory. Its legal system is based on the English common law and has developed through a combination of local legislation enacted by the Bermuda Parliament and the application of English common law principles as received and developed in Bermuda.

20. The supreme legislative authority in Bermuda is the Bermuda Parliament, which consists of the House of Assembly and the Senate. The Bermuda Parliament enacts Acts of Parliament, which constitute the primary legislation of Bermuda. Subsidiary legislation (regulations and orders) may be made under authority delegated by Acts of Parliament.

21. The principal sources of law in Bermuda are: (a) Acts of Parliament enacted by the Bermuda Parliament; (b) English common law as received in Bermuda and as subsequently developed and applied by the courts of Bermuda; (c) subsidiary legislation and regulations made under authority delegated by Acts of Parliament; and (d) the orders, rules and practice directions of the Bermuda courts.

22. Given that Bermuda is a relatively small jurisdiction, the extent of its body of case law is not nearly as voluminous as many other common law jurisdictions. As such, there is often no decided local case governing a particular legal point. In these circumstances, the

courts of Bermuda can and do have regard to cases decided in those other jurisdictions, particularly appellate decisions from England and Wales which are generally treated as persuasive or highly persuasive, although they are not strictly binding on the courts of Bermuda. Where no specific local statutory provision applies, the question will often be determined according to common law and the doctrine of judicial precedent applies. The court of first instance is the Bermuda Court which is bound to follow the ratios of decisions of the Court of Appeal for Bermuda and the Privy Council on appeals from Bermuda. The Bermuda Court will also, as a matter of judicial comity, usually follow its own previous decisions unless they are shown to be wrong.

23. There is a right of appeal from the Bermuda Court to the Court of Appeal for Bermuda. The final appellate court for Bermuda is the Judicial Committee of the Privy Council ("Privy Council") which sits in London and which is comprised of members of the English Supreme Court (the highest court in England and formerly known as the House of Lords). The Bermuda Court is bound by decisions of the Court of Appeal for Bermuda and by decisions of the Privy Council on appeals originating from Bermuda.

**Liquidation of Bermuda Limited Liability Companies**

24. The statutory provisions governing the liquidation of Bermuda limited liability companies are set out in Part 13 of the LLC Act (sections 104 to 221), which contains a comprehensive and self-contained winding-up regime for limited liability companies formed under the LLC Act.

25. Part 13 of the LLC Act sets out the grounds for winding up, the appointment and powers of liquidators, the rights of creditors and contributories, and the procedures for distribution of assets.[5] The LLC Act is the governing statute for the liquidation of Jaguar.

[5] Part 13 (sections 104 to 213) of the LLC Act.

26. A Bermuda limited liability company may be wound up: (a) voluntarily;[6] (b) compulsorily, by order of the Bermuda Court;[7] or (c) under the supervision of the Bermuda Court.[8]

27. In the present case, RBC presented a winding-up petition to the Bermuda Court on 16 October 2025 (as amended on 31 October) on the ground that Jaguar was unable to pay its debts. The JPLs were appointed on 31 October 2025 pursuant to section 117 of the LLC Act. The Bermuda Court made the Winding-Up Order on 27 March 2026, and on 16 June 2026 the JPLs became the JLs of Jaguar pursuant to the JL Appointment Order. Jaguar is now in compulsory liquidation under the supervision of the Bermuda Court.

**Liquidation by the Bermuda Court**

28. The compulsory liquidation of a Bermuda limited liability company is carried out by the Bermuda Court pursuant to certain statutory mechanisms set out in the LLC Act. A Bermuda limited liability company may be compulsorily wound up by the Bermuda Court where: (a) the company has passed a special resolution requiring the company to be wound up by the Court; (b) the company has not commenced business within a year from its registration, or suspends its business for a whole year; (c) the company carries on any restricted business activity in contravention of section 65 of the LLC Act; (d) the company engages in a prohibited business activity in contravention of section 68 of the LLC Act; (e) the company is unable to pay its debts; (f) the consent by the Minister, where under the LLC Act such consent was required, was obtained as a result of a material misstatement in the application for consent; (g) the Bermuda Court is of the opinion that it is just and equitable that the company be wound up;

---

6 Section 150 of the LLC Act.

7 Section 108 of the LLC Act.

8 Section 104 of the LLC Act.

or (h) it is not reasonably practicable to carry on the company's business in conformity with its LLC agreement.[9]

29. Jaguar was wound up on the basis that it was unable to pay its debts as they fell due, upon the petition of RBC.

30. A general principle underlying Bermuda's insolvency regime is that the claims of investors and creditors within the same class are treated on a *pari passu* basis.[10]

31. Section 114(4) of the LLC Act provides that where a winding-up order has been made, no suit or other proceeding may be commenced or continued against the company except with leave of the Bermuda Court and subject to such terms as the Bermuda Court may impose. This automatic stay, similar to the automatic stay provided for in the Bankruptcy Code, serves to promote the JLs' ability to deal with the claims of creditors collectively and comprehensively.

32. In my experience, Bermuda liquidation proceedings are fair and equitable. All creditors and interest holders have an opportunity to be heard by the Bermuda Court and no creditor will be prejudiced because it is foreign-based.

**<u>The JLs</u>**

33. The JLs are fiduciaries and officers of the Bermuda Court.

34. The JL Appointment Order provides, at paragraph 1, that the JLs shall be appointed as joint liquidators of Jaguar, to act without a Committee of Inspection, and with the powers set out in section 122 of the Act.

---

9 Section 108 of the LLC Act.

10 Section 175 of the LLC Act.

35. The JLs' powers as set out in section 122 of the LLC Act (see paragraph 16 of this Declaration above), include amongst others to do all things as may be necessary for winding up the affairs of the limited liability company and distributing its assets.[11]

36. Section 122 (2) of the LLC Act further provides the JLs to exercise the following powers without the Bermuda Court's sanction:

(a) to sell the real and personal property and things in action of the limited liability company by public auction or private contract, with power to transfer the whole thereof to any person or to sell the same in parcels;

(b) to do all acts and to execute, in the name and on behalf of the limited liability company, all deeds, receipts and other documents, and for that purpose to use, when necessary, the limited liability company's seal;

(c) to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors;

(d) to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the limited liability company, with the same effect with respect to the liability of the limited liability company as if the bill or note had been drawn, accepted, made or endorsed by or on behalf of the limited liability company in the course of its business to raise on the security of the assets of the limited liability company any money required;

(e) to raise on the security of the assets of the limited liability company any money required;

(f) to take out in his official name letters of administration to any deceased contributory and to do in his official name any other act necessary for obtaining payment of any money due from a contributory or his estate which cannot be conveniently done in the name of the limited liability company, and in all such cases the money due shall, for the purpose of enabling the liquidator to take out the letters of administration or recover the money, be deemed to be due to the liquidator himself;

(g) to appoint an agent to do any business which the liquidator is unable to do himself; and

[11] Section 122 of the LLC Act.

(h) to do all such other things as may be necessary for winding up the affairs of the limited liability company and distributing its assets.[12]

37. Moreover, the JLs are also generally empowered to investigate: (i) the causes for the failure of Jaguar, as well as, (ii) generally, the promotion, business, dealings and affairs of Jaguar.[13]

38. On 15 October 2026, the Bermuda Court entered an order (the "Sanction Order") authorising the JLs to act as Jaguar's Foreign Representatives.

## United States Bankruptcy Code

### A. The liquidation of Jaguar is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

39. I am advised by United States Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as:

> … a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

40. Although the application of section 101(23) of the Bankruptcy Code is ultimately a question of applicable United States law on which I am not qualified to opine, based on my reading of the language of the section, I believe that the Bermuda liquidation of Jaguar satisfies the above definition. It is a collective judicial proceeding, in Bermuda, governed by Bermuda statute applicable to corporate insolvencies (the LLC Act and the Companies Act as applied by the LLC Act), in which Jaguar's assets and affairs are subject to the control and supervision of the Bermuda Court, for the purposes of liquidation.

---

[12] Section 122(2)(a)-(h) of the LLC Act.

[13] Section 143 of the LLC Act.

**B. The JLs are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.**

41. I am also advised by United States Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

> … a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

42. Again, the application of section 101(24) is ultimately a question of applicable United States law on which I am not qualified to opine, but in my view, the JLs satisfy this definition. First, the Bermuda Court has authorised the JLs to act as Jaguar's "foreign representatives" within the meaning of section 101(24) pursuant to the Sanction Order. Second, I believe that the Foreign Representatives are persons "authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs." The JLs have been appointed, as fiduciaries and officers of the Bermuda Court, by the Bermuda Court to investigate and administer the distribution of Jaguar's assets and affairs and to act as duly authorised representatives of Jaguar. Moreover, the JPL Appointment Order expressly provides, in terms, that the JPLs "shall be a foreign representative for the purpose of the UNCITRAL Model Law," which further confirms their status as authorised foreign representatives.

**C. Factors relevant to the determination of COMI.**

43. Although Bermuda has not enacted local legislation incorporating the centre of main interests test set out in the UNCITRAL Model Law on Cross-Border Insolvency, the Bermuda Court has indicated its willingness, at common law, to take into account all the

circumstances of the case, including a company's centre of main interests and the forum with the closest connection to the issues in question.[14]

44. The Bermuda Court has also issued Practice Directions setting out guidelines for court-to-court communications and cooperation in cross-border cases, specifically: (a) Practice Direction, Circular No. 6 of 2017, Guidelines for Communication and Cooperation between Courts in Cross-Border Insolvency Matters; and (b) Practice Direction, Circular No. 17 of 2007, Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases. This demonstrates that the Bermuda courts have a well-established framework for international cooperation in insolvency proceedings.

45. I am advised by U.S. Counsel that certain other provisions of Bermuda law may be relevant to the determination of the centre of main interests ("COMI") of the foreign Debtor under section 1517 of the Bankruptcy Code. Under section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office is presumed to be the centre of its main interests.

46. Jaguar was registered in Bermuda on 13 December 2023 with registration number 202303098. Jaguar's registered office is Teneo (Bermuda) Limited, Third Floor, 19 Par-la-Ville Road, Hamilton HM 11, Bermuda.

47. A limited liability company formed under the LLC Act is prohibited from undertaking business in Bermuda, except in furtherance of the business or affairs of the limited liability company carried on outside of Bermuda, unless that limited liability company holds a licence to carry on business in Bermuda under any applicable law. Subject to compliance with any other applicable licensing or regulatory requirements, in order to further objects outside of

---

[14] Re ICO Global Communications (Holdings) Ltd [1999] Bda LR 69, Re Refco Capital Markets Ltd [2006] Bda LR 94, Re Celestial Nutrifoods Limited [2017] Bda LR 11 and Re C&J Energy Services Ltd [2017] Bda LR 22.

Bermuda, a limited liability company may effect and conclude contracts and exercise all of its powers necessary for the carrying on of its business, within Bermuda.[15] In other words, subject to any licensing and regulatory requirements, it can employ staff or agents in Bermuda and maintain an office in Bermuda.

48. As such, although, upon its formation as a limited liability company, Jaguar was restricted from carrying on business within Bermuda, that did not mean that Jaguar had no presence at all in this jurisdiction. The registered office of Jaguar has been situated in Bermuda since its inception and continues to be so situated. In addition, Jaguar's sole member, FIH, held its interest in Jaguar from the Cayman Islands, but Jaguar itself was at all material times registered in, administered from and holds a bank account in Bermuda. The JLs are all based in Bermuda, at Teneo (Bermuda) Limited, Third Floor, 19 Par-la-Ville Road, Hamilton HM 11, Bermuda, and the liquidation is being administered from Bermuda.

49. In addition, the restriction on carrying on of an exempted company's business within Bermuda, only in support of its business outside Bermuda, does not have any practical effect in the context of the liquidation of that company. Following the appointment of the JPLs and the subsequent making of the Winding-Up Order, the liquidation of Jaguar has been conducted within Bermuda. The JLs' conduct of the liquidation is subject to the supervision of the Bermuda Court. Various steps taken by the JLs have required or would require the express permission of the Bermuda Court. Other matters have been reported to the Bermuda Court either in liquidator reports or in affidavits and letters to the Bermuda Court. The JLs report to and are supervised by the Bermuda Court in all material aspects of the liquidation. In practice, this means that the business of Jaguar is presently being conducted by the JLs from within

[15] Section 9 of the LLC Act.

Docusign Envelope ID: DEC71CCA-A862-8E61-80E7-A15D9BA089CF


Bermuda and all aspects of the winding up of Jaguar are subject to the supervision of the Bermuda Court.

50. Accordingly, it is respectfully submitted that there is a substantial nexus to Bermuda in respect of the operating control over Jaguar. The registered office of Jaguar is, and has always been, situated in Bermuda; the JLs are all based in and operating from Bermuda; and the entire liquidation of Jaguar has been conducted in and is subject to the supervision of the Bermuda Court. There is a strong presumption under section 1516(c) of the Bankruptcy Code that the COMI of Jaguar is in Bermuda, and the foregoing facts and circumstances are consistent with and reinforce that presumption.

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 28th day of October, 2026.

Henry Tucker
Harneys Bermuda Limited
4th Floor, Sterling House
16 Wesley Street
Hamilton HM 11, Bermuda